## MOTT v. MOTT.

(Supreme Court, Appellate Division, Second Department. November 19, 1909.)

1. JUDGMENT (§ 152*)—OPENING DEFAULT—JURISDICTION OF SPECIAL TERM.
   The Special Term has jurisdiction to open a default entered at Trial Term.

   [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 299; Dec. Dig. § 152.*]

2. DIVORCE (§ 161*)—DEFAULT—OPENING—MERITORIOUS DEFENSE.
   Where a husband, suing a wife for divorce because of adultery, thrice fails to prove the charge, the jury disagreeing, and on the fourth trial, the wife being sick and unable to attend, and in mourning for the death of her father, and without funds to defend, a decree for complainant was entered on her default, it will be set aside at Special Term, since there is properly no default in divorce cases.

   [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 522–526; Dec. Dig. § 161.*]

Appeal from Special Term, Nassau County.

Suit by Augustus Mott against Katherine S. Mott for divorce. From an order of the Special Term, opening a default taken at the Trial Term, plaintiff appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and JENKS, RICH, and MILLER, JJ.

John J. Graham, for appellant.
Franklin A. Coles, for respondent.
Lincoln B. Haskin, for co-respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

HIRSCHBERG, P. J. The appellant presents but a single point on the appeal herein, and that is to the effect that the Special Term of the Supreme Court is without power to make an order opening a default suffered at a Trial Term. He relies on the case of Warth v. Moore Blind Stitcher & Overseamer Co., 125 App. Div. 211, 109 N. Y. Supp. 116, as authority for the proposition that the only remedy, where a default has been taken at the Trial Term, is to appeal from the order. In that case, however, the court at Special Term refused to open an alleged default, and its action was affirmed by this court on the merits. In that case, the alleged default was intentional, and the pretext for a postponement at the Trial Term was the absence of a witness not shown to be material or necessary. The affidavits on which the application was based did not state that the witness would testify to anything material to the issue, or that he knew any fact which was to be proved upon the trial. It is true that the opinion written in the Warth Case, supra, refers to the case of Herbert Land Co. v. Lorenzen, 113 App. Div. 802, 99 N. Y. Supp. 937, where an order opening a default was modified; but the controlling concurrences were in the result only.

Aside from what may be said occasionally in opinions as to the propriety of the practice of moving at Special Term for the opening of a default incurred at the Trial Term, I am sure there is no authoritative decision in this state to the effect that the power does not exist, while the contrary is abundantly supported both by reason and authority. Under the system of jurisprudence of which ours is the immediate successor, it was held that the only remedy, where a default has been taken at Trial Term, is by motion at the Special Term, and an appeal from an order refusing to postpone a trial was accordingly dismissed. Martin v. Hicks, 6 Hun, 74. The court said:

"We are of opinion that no appeal lies directly to the General Term from an order, made at circuit, refusing to postpone the trial of a case. The correct practice in such cases is laid down in volume 3 of Wait's Practice, at page 77, as follows: 'Where a party defendant feels himself aggrieved by a refusal to postpone the trial, whether such refusal be made on a trial by jury or a trial by the court, he may withdraw from the trial; and, if the trial proceeds, and the cause is decided against him, he may, upon affidavit showing the application to postpone, the papers upon which it was founded, its denial, and that a decision has been made against him, make a nonenumerated motion, at Special Term, to set aside such decision. He may also remain and try the case on the merits, and, in case of a decision against him, either pursue the same course to obtain a new trial; or may, if the trial was by jury, under section 265, move at Special Term, on a case, for a new trial, alleging, as one of the grounds, the refusal to postpone the trial, or, if the trial was by the court, he may then, under section 268, appeal directly to the General Term, alleging, as cause for reversal, the refusal to postpone.' Howard v. Freeman, 3 Abb. Prac. (N. S.) 292; Ogden v. Payne, 5 Cow. 15; Hooker v. Rogers, 6 Cow. 577; People v. Vermilyea, 7 Cow. 369; Brooklyn Oil Works v. Brown, 38 How. Prac. 451, 7 Abb. Prac. (N. S.) 382; Miller v. Porter, 17 How. Prac. 526."

In Cahill v. Hilton, 31 Hun, 114, the question of the right to appeal from an order refusing to postpone a trial was not involved; but the General Term in this department held that the Supreme Court had power to set aside an inquest taken at a Trial Term, and that the practice was proper. The court said (pages 115, 116):

"Motions to open defaults taken at the circuit are by no means uncommon or unusual, and they are not unfrequently made where the motion for a postponement has been denied by the trial judge. Neither does the granting of such motion call in question the propriety of the proceedings at the circuit. They are usually based on new papers and further facts, and are addressed to the Special Term of the court, where adequate conditions may always be imposed in full view of all the facts. The former trial of the cause resulted in a disagreement of the jury, and now a large judgment has been obtained against the defendants by default. It will be much more satisfactory to reach that result by a fair trial, and our conclusion is that the action of the Special Term in opening the default and affording an opportunity for a trial was a wise exercise of discretion."

In our sister department a decision to the same effect was made as recently as last December in Matter of Rubenstein, 129 App. Div. 326, 113 N. Y. Supp. 554. The Appellate Division of the First Department was unanimous in holding that, while there may be extreme cases where a party, whose motion to postpone a trial has been denied, should have the right to enter a formal order for the purpose of appeal, the better practice is to allow an inquest to be taken, leaving the defeated party to move at Special Term to open the default, so that the matter may be disposed of by a single motion. To require a direct appeal in all cases would be as intolerable as it would be unreasonable. The court said (page 328 of 129 App. Div., page 556 of 113 N. Y. Supp.):

"The court at Special Term has always exercised the power to open defaults and to vacate judgments taken by default, and it would be unwise to attempt to limit that practice to causes established by facts not formally presented, and which could not have been so presented, to the trial court. Moreover, it will not do to encourage appeals from orders denying motions to postpone excepting in cases of necessity, for the time of the court would thus be occupied with motions to stay trials pending appeals, and in hearing unnecessary appeals, and in duplicating work for the court and increasing expense of litigation, because, if the appeals should be unsuccessful, motions would be made at Special Term on new or additional facts. We are of opinion, therefore, that excepting in extreme cases, as indicated, it is better that the practice heretofore existing be adhered to, and that inquest be allowed to be taken where the court denies the motion to postpone, leaving the party making default to his remedy by motion at Special Term, where the whole matter may be disposed of by one motion, and there is greater authority and discretion in imposing terms."

Aside from the question of practice, however, there is another and controlling reason why the order in this case must be affirmed. The opening of the default herein is in accordance with the settled policy of this state on a question of vital interest to every citizen. The action is brought by husband against wife to procure an absolute divorce on the ground of adultery. In the strict sense, a default could not be taken, and the court in this class of cases is alert to see that the defendant does not collude with the plaintiff, so as to aid him in the accomplishment of his purpose. The action had been tried three times in a single year, each trial occupying several days, and the defendant being successful in her defense on each occasion to the extent of securing a disagreement of the jury. The last trial occurred less than six weeks before the case was reached at the term at which the default was taken. The defendant had been obliged to change counsel, was without funds with which to pay him, and had been dependent from the inception of the litigation, not upon her husband, but

upon her aged father, for the money with which to pay lawyers, witnesses, and the many other known expenses incident to such constant and bitterly contested trials; and when the fourth trial was thus speedily pressed upon her, she was not only sick abed, physically and mentally incapable of reaching the courthouse, which was three miles from her home, but was in mourning for the death of her father, on whom she was dependent for the necessary financial aid, and whose death had occurred within a week of the commencement of the Trial Term.

The learned trial justice, in view of the plaintiff's opposition to the requested postponement, ordered the defendant's examination by two physicians, who were directed to go to her house, make a personal examination of her, and report her condition to the court. It does not appear that these physicians knew of their appointment, or that there was any reason why they should have abandoned their practice in anticipation of it, and they chanced to be out of their offices at the time: but the defendant's attorney made immediate preparation for their attendance as soon as they could be procured. In less than half an hour, however, after they had been designated, the court appears to have changed its mind, and to have ordered the trial to proceed; and the plaintiff thereupon procured a divorce because of the sickness of his wife, and not because of her adultery, which the history of the litigation shows he had failed three times to successfully establish with a fair trial.

There are many other facts in the case which tend to emphasize the propriety and justice of the order appealed from; but they need not be referred to in detail. It is sufficient to say that, in cases where the defense was much less meritorious than this lady's defense has been three times demonstrated to be, the courts have refused to permit a snap divorce to stand. In Weidner v. Weidner, 85 Hun, 432, 32 N. Y. Supp. 894, an order denying a motion to open a judgment for divorce taken by default was reversed by this department, notwithstanding the defendant had left the state, did not serve any answer, and allowed nine months to elapse before making the application; the court saying (page 434 of 85 Hun, page 896 of 32 N. Y. Supp.):

"The defendant should have an opportunity to try the accusation of adultery made against him."

In Scripture v. Scripture, 70 Hun, 432, 24 N. Y. Supp. 301, the court, in reversing an order refusing to vacate a judgment for divorce taken by default, well said (page 438 of 70 Hun, page 305 of 24 N. Y. Supp.):

"The court of equity has exercised the power of opening a decree of divorce, and letting in the defendant to defend, in cases which would seem to appeal less strongly for such relief than in this case."

In Hamilton v. Hamilton, 29 App. Div. 331, 333, 51 N. Y. Supp. 365, 367, the court said:

"Although the rule is that a default will not be opened to permit a defense to be interposed which is not meritorious, it will be found that it has not been vigorously applied in actions for absolute divorce; but, on account of the bearing that such actions have upon the status of the parties and their offspring, it has been the frequent practice of the court to open defaults, and, upon application, permit either party to defend against charges of adultery."

In the recent case of Henderson v. Henderson, 83 App. Div. 449, 82 N. Y. Supp. 444, the court reversed an order denying the defendant's motion to open a default under circumstances strikingly similar to those disclosed in the case at bar. The court said (page 451 of 83 App. Div., page 445 of 82 N. Y. Supp.):

"There is no dispute about the condition of the defendant, and it appears that her health was such that she could not have attended court upon the day on which the default was taken. The default arose from the neglect of the defendant or her attorneys to properly present proof of her actual condition to the court. Considering, however, the nature of this action, and the interest that the state has in the subject of the divorce, we think the court below should have opened the default and allowed the defendant to be heard before granting to the plaintiff an absolute divorce. The rule governing the opening of defaults in ordinary actions involving a mere pecuniary liability should not be rigorously applied to actions of this character; and where, as in this case, there seems to be no reason to doubt that the condition of the defendant was such that it was impossible for her to appear on the day that the case was called for trial, we think she should have been given an opportunity to present her evidence to show that the plaintiff was not entitled to a divorce."

The order should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.